<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSE VELEZ, | Civil Action No. 12-0430 (DRD) |
| Petitioner, | |
| v. | **OPINION** |
| PAUL K. LAGANA, et al., | |
| Respondents. | |

**APPEARANCES**:

JOSE VELEZ, 925538B
Northern State Prison
168 Frontage Road
Newark, New Jersey 07114
    *Petitioner Pro Se*

CHRISTOPHER W. HSIEH, ESQ.
PASSAIC COUNTY PROSECUTOR
401 Grand Street
Paterson, New Jersey 07505
    *Attorneys for Respondents*

**Debevoise, Senior U.S. District Judge**

Jose Velez filed an Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction filed in the Superior Court of New Jersey, Passaic County, on April 4, 1997, imposing a life sentence, subject to a 30-year period of parole ineligibility, for first-degree murder, second-degree possession of a weapon for an unlawful purpose, third-degree unlawful possession of a weapon, and third-degree hindering apprehension. The State filed an Answer with the record. After carefully reviewing the arguments of the parties and the state court record, this Court will dismiss the Petition with prejudice and deny a certificate of appealability.

# I.  BACKGROUND

## A.  The Crime

The Appellate Division of the Superior Court of New Jersey described the facts surrounding the murder as follows.   In 1994 Jose Lopez (the victim) told Lisa Dagle (Velez's girlfriend) that Petitioner Velez had been unfaithful to her.   Velez was angry and asked Lopez why he was creating problems between Velez and Lisa; the men agreed to meet at a park in Passaic to have a fistfight.   That night, Lopez went to the park with four friends and Velez went there with four of his friends.   Conflicting accounts were given at trial as to what occurred, with Velez and his friend testifying that Lopez or one of his friends shot a gun, and Angel Diaz (the brother of Lopez) testifying that he knocked on the car window where Velez sat to talk with him but the car drove away.   In any event, a car chase occurred and

> [t]he next day, Velez bought a gun.   While on his way to visit his friend, Velez and Louie Valasquez noticed [Lopez's] car on Monroe Street.   Diaz, Comedy, and [Lopez] were waiting at a traffic light when they noticed Velez and Louie Lou, wearing dark hooded sweatshirts, exit a van and walk towards them.   As he approached the car, Velez saw [Lopez] in the passenger's seat.   He said he believed [Lopez] was trying to take something from his waistband.   Velez shot [Lopez] once.   Diaz said that they were not armed and neither had reached for a weapon. Realizing what happened, Diaz left the car and hid behind the fender.   Velez then ran into an alleyway and threw his gun to the ground.   The police later recovered that gun.
>
> Diaz jumped back in the car and sped to the hospital where [Lopez] was pronounced dead.   He informed the police at the hospital that the shooter was "Pito, a Hispanic male about six feet tall, dark skinned, with a teardrop tattoo under his left eye." Diaz later selected Velez' photo from a photo book at headquarters and gave a statement about the shooting.   The next morning the police found Velez in the staircase of a friend's apartment in Elizabeth trying to hide.   Velez was arrested, advised of his <u>Miranda</u> rights, and taken to the station where he was re-read his <u>Miranda</u> rights.   Velez gave a tape-recorded statement to the Passaic police but he did not mention that [Lopez] or his friends fired upon him.

2

State v. Velez, Docket No. A-5443-96T4 sl. opinion (N.J. Super. Ct., App. Div., Nov. 9, 1999) (footnotes omitted) (ECF No. 12-14 at 6-7).

**B.      The State Court Proceedings**

A jury found Velez guilty of first-degree murder, second-degree possession of a weapon for an unlawful purpose, third-degree unlawful possession of a weapon, and third-degree hindering apprehension.   By judgment entered April 4, 1997, the trial judge imposed a life sentence with 30 years of parole ineligibility.   Velez appealed and on November 9, 1999, the Appellate Division affirmed.   (ECF No. 12-14.)   On March 22, 2000, the New Jersey Supreme Court denied certification.   See State v. Velez, 163 N.J. 396 (2000) (table).

On May 23, 2000, Velez filed his first petition for post-conviction relief.   After conducting an evidentiary hearing, the trial judge denied relief on November 5, 2001.   Velez appealed and on November 6, 2003, the Appellate Division affirmed.   (ECF No. 12-15.)   The New Jersey Supreme Court denied certification on March 2, 2004.   See State v. Velez, 179 N.J. 369 (2004) (table).   Velez filed his second post-conviction relief petition on June 15, 2004.   After conducting an evidentiary hearing, the trial judge denied the second post-conviction relief petition on August 22, 2006.   Velez appealed, and on October 13, 2009, the Appellate Division affirmed.   See State v. Velez, 2009 WL 3459864 (N.J. Super. Ct., App. Div., Oct. 13, 2009).   On September 9, 2011, the New Jersey Supreme Court denied certification.   See State v. Velez, 208 N.J. 337 (2011) (table).

**C.   Procedural History of § 2254 Petition**

On December 6, 2011, Velez signed a declaration in support of a Petition for a Writ of Habeas Corpus and handed it to prison officials for mailing to the Clerk.   (ECF No. 1-1.)   Velez

3

attached to his declaration opinions and other documents from the state court criminal proceeding. By Order filed February 16, 2012, the Court notified Velez that the pleading he filed did not comply with Rule 2(c) of the Rules Governing Section 2254 Cases and gave him an opportunity to file an amended petition on the form required by Rule 2(d).   (ECF No. 2.)

Velez dated his Amended Petition as December 6, 2011, the date he signed his initial pleading, but the Clerk did not receive the Amended Petition until June 15, 2012.   (ECF No. 5 at 26.)   The Amended Petition raises four grounds, which are the same grounds Velez presented on direct appeal:

> Ground One:   THE PROSECUTOR IMPROPERLY INTRODUCED EVIDENCE SUGGESTING THAT DEFENDANT HAD COMMITTED PRIOR CRIMES, AND ERRONEOUSLY SUGGESTED THAT HE HAD MURDERED SOMEONE IN THE PAST; THIS AND THE TRIAL COURT'S FAILURE TO GIVE LIMITING AND CURATIVE INSTRUCITONS TO THE JURY DEPRIVED DEFENDANT OF A FAIR TRIAL.   U.S. CONST. AMENDS. V, VI, XIV[.]

> A.   EVIDENCE THAT DEFENDANT'S MUGSHOT WAS ON FILE AT POLICE HEADQUARTERS, AND TESTIMONY SUGGESTING THAT HE HAD MURDERED BEFORE, WERE INADMISSIBLE BECAUSE THEY WERE NOT PROBATIVE OF ANY GENUINE FACT ISSUE BUT WERE HIGHLY PREJUDICIAL TO DEFENDANT.

> B.   THE PROSECUTOR'S INCESSANT USE OF DEFENDANT'S ALIAS THROUGHOUT THE TRIAL IMPROPERLY SUGGESTED THAT DEFENDANT WAS A MEMBER OF THE CRIMINAL CLASS AND FORTIFIED THE IMPROPER SUGGESTION OF CRIMINALITY ENGENDERED BY THE MUGSHOT AND TATTOO EVIDENCE.

> C.   THE TRIAL COURT GAVE NO CURATIVE INSTRUCTIONS TO THE JURY AND IN ANY EVENT, THE PREJUDICE TO DEFENDANT WAS NOT SUSCEPTIBLE TO CURE BY CORRECTIVE JURY INSTRUCION.

Ground Two:  THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON IMPERFECT SELF-DEFENSE AND PASSION\PROVOCATION MANSLAUGHTER DENIED DEFENDANT A FAIR TRIAL.

Ground Three:  SINCE THE STATE HAD NOT ESTABLISHED THAT DEFENDANT HAD DESTROYED OR CONCEALED THE GUN TO HINDER HIS APPRE[HEN]SION BY THE POLICE; THE TRIAL COURT SHOULD HAVE GRANTED DEFENDANT'S MOTION FOR ACQUITTAL.

Ground Four:  THE MAXIMUM SENTENCE (LIFE) FOR MURDER WAS NOT SUPPORTED BY THE PROPER ANALYSIS OF AGGRAVAT[ING] AND MITIGATING FACTORS.

(ECF Nos. 5 at 13, 15, 16, 18.)

The State filed an Answer arguing that Velez filed the Petition beyond the one-year statute

of limitations and that Velez is not entitled to habeas relief on the merits.   (ECF No. 13-1.)

## II.   STATUTE OF LIMITATIONS

Respondent argues that the § 2254 Petition is barred by the statute of limitations. The Anti-

Terrorism and Effective Death Penalty Act's 365-day statute of limitations begins on the latest of

the following dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence . . . .

28 U.S.C. § 2244(d)(1).

Section 2244(d)(2) requires statutory tolling of the statute of limitations under the following circumstances: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). An application is "filed" when it "is delivered to, and accepted by, the appropriate court officer for placement into the official record." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (citations omitted). An application is "properly" filed

> when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee . . . . In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, or on all filers generally . . . . But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.

Artuz, 531 U.S. at 8-9 (citations omitted); see also Allen v. Siebert, 552 U.S. 3 (2007) (petition for state post-conviction relief that was rejected by the state courts as untimely is not "properly filed" under § 2244(d)(2)). Thus, the question of the proper filing of a state post-conviction relief application is a matter of state procedural law governing post-conviction filings. See Artuz, 531 U.S. at 8 ("And an application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.") (emphasis in original); see also Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction relief petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2)") (internal quotation marks and citation omitted); Douglas v. Horn, 359 F.3d 257, 262 (3d Cir. 2004) (court "must look

to state law governing when a petition for collateral relief is properly filed.") (quoting <u>Fahy v. Horn</u>, 240 F.3d 239, 243 (3d Cir. 2001)).

In this case, the statute of limitations is governed by § 2244(d)(1)(A).  The New Jersey Supreme Court denied certification on direct review on March 22, 2000, and the time to file a petition for certiorari in the United States Supreme Court expired 90 days later on June 20, 2000. <u>See</u> <u>Gonzalez v. Thaler</u>, 132 S.Ct. 641, 653-54 (2012); <u>Wali v. Kholi</u>, 131 S. Ct. 1278, 1282 (2011); <u>Lawrence v. Florida</u>, 549 U.S. 327, 332-333 (2007); <u>Merritt v. Blaine</u>, 326 F.3d 157, 161 (3d Cir. 2003).   However, because Velez filed his first petition for post-conviction relief in the trial court on May 23, 2000, and Respondent does not dispute that this first petition was properly filed, the statute of limitations was tolled from May 23, 2000, until the New Jersey Supreme Court denied certification on March 2, 2004.   See <u>State v. Velez</u>, 179 N.J. 369 (2004) (table).   The statute of limitations picked up the next day, March 3, 2004, at day one.

The limitations period ran until Velez filed his second post-conviction relief petition, which the trial court received on March 22, 2004 (20 days into the 365-day limitations period), and filed on June 15, 2004 (106 days into the limitations period), provided the second petition was properly filed.    Respondent argues that the second petition for post-conviction relief did not toll the federal limitations period because, according to Respondent, it was not "properly filed" since Velez filed it more than five years after his conviction was entered.[1]   The Appellate Division did not find that

_____

[1]  N.J. Court Rule 3:22-12(a)(1) provides that "no petition shall be filed pursuant to this rule more than 5 years after the date of entry pursuant to Rule 3:21-5 of the judgment of conviction that is being challenged unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental

the second post-conviction relief petition was time barred and, although the trial court noted in a footnote that the second petition was filed beyond the five-year limit of Rule 3:22-12(a)(1), the trial court did not consider Rule 3:22-12(a)(2)(C).   In addition, the trial court appointed counsel for Velez, conducted an evidentiary hearing, and rendered a merits decision on the claims raised in the petition.[2]   (ECF No. 12-13.)   The evidentiary hearing concerned the claims that trial counsel was ineffective in waiving his right to be present during sidebar and in-chambers discussions during voir dire and that post-conviction relief counsel was ineffective in failing to raise this claim on post-conviction relief.

_____

injustice."   Rule 3:22-12(a)(2) provides that "no second or subsequent petition shall be filed more than one year after the latest of:

> (A) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or

> (B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or

> (C) the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief is being alleged.

N.J. Ct. R. 3:22-12(a)(2).

[2] Velez argued in the second post-conviction relief petition that (1) trial counsel was constitutionally deficient (in failing to object to the prosecutor's introduction of other crimes evidence, failing to request an instruction on imperfect self-defense, and failing to protect his right to be present during voir dire; (2) post-conviction relief counsel was ineffective for failing to raise these issues in the first post-conviction relief petition; and (3) the sentence violated the Sixth Amendment.   See State v. Velez, 2009 WL 3459864 (N.J. Super. Ct., App. Div., Oct. 13, 2009).

In the absence of a "clear indication" by the state courts that a post-conviction relief petition is untimely, the federal court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." Evans v. Chavis, 546 U.S. 189, 198 (2006); accord Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 85-86 (3d Cir. 2013) ("But if a state court fails to rule clearly on the timeliness of an application, a federal court 'must . . . determine what the state courts would have held in respect to timeliness.'") (quoting Evans, 546 U.S. at 198)). In this case, the Appellate Division did not intimate that the second post-conviction relief petition was untimely and examined the merits of the claims. This Court finds that, had the Appellate Division examined timeliness, the court would have found the second post-conviction relief petition timely under Rule 3:22-12(a)(2)(C). Rule 3:22-12(a)(2)(C) extends the statute of limitations for a year after the date of the denial of the first petition for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first petition is being alleged; Velez claimed in the second petition that post-conviction relief counsel was ineffective in failing to raise the voir dire claim; and Velez filed his second petition within one year of the New Jersey Supreme Court's denial of certification on his first petition. Accordingly, the second petition was timely under Rule 3:22-12(a)(2)(C) and, had the Appellate Division considered the issue, the court would have found the petition timely. Thus, the federal statute of limitations was tolled pursuant to 28 U.S.C. § 2244(d)(2) from the date on which the second post-conviction relief petition was filed - June 15, 2004 - until the New Jersey Supreme Court denied certification on September 9, 2011.

The limitations period picked up at day 107 on September 10, 2011, the day after the New Jersey Supreme Court denied certification, and ran for the next 89 days until Velez handed his

initial habeas Petition to officials for mailing to the Court on December 6, 2011.   Because Velez

filed his Petition on the 196th day of the 365-day statute of limitations, the Petition was timely.

### III.   STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court

to grant a habeas petition to a state prisoner.   See Cullen v. Pinholster, 131 S.Ct. 1388, 1398

(2011).   Section 2254(a) permits a court to entertain only claims alleging that a person is in state

custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. §

2254(a).   Where a state court adjudicated petitioner's federal claim on the merits,[3] as in this case,

a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was

contrary to, or involved an unreasonable application of, clearly established Federal Law, as

determined by the Supreme Court of the United States', or 'was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.'"

Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).   "When

reviewing state criminal convictions on collateral review, federal judges are required to afford state

courts due respect by overturning their decisions only when there could be no reasonable dispute

that they were wrong."   Woods v. Donald, 135 S.Ct. 1372, 1376 (2015).   The petitioner carries

the burden of proof, and review under § 2254(d) is limited to the record that was before the state

---

[3] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court
proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2)
resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground."
Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

court that adjudicated the claim on the merits.  See Harrington v. Richter, 131 S.Ct. 770, 785 (2011).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. Woods, 135 S.Ct. at 1376 (quoting White v. Woodall, 134 S.Ct. 1697, 1702 (2014), and Williams v. Taylor, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  Williams, 529 U.S. at 405-06.   Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id., 529 U.S. at 413.

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005).   Second, the AEDPA precludes habeas relief unless the adjudication

11

of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).

## IV.   DISCUSSION

### A.   Admission of Prior Crimes and Other Evidence

In Ground One, Velez claims that the admission of certain evidence violated due process. Specifically, Velez challenges the admission of his mugshot, the admission of testimony that he had a tattoo on his face at the time of the incident, and references to him by his nickname Pito.

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."   Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983).   The admissibility of evidence is generally a question of state law which is not cognizable under habeas review.   See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling . . . that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions").

In Estelle v. McGuire, 502 U.S. 62 (1991), the Supreme Court held that the state court's admission in petitioner's trial for murdering his infant daughter of the testimony of two physicians that the child had suffered child abuse (evidence of rectal tearing that was six weeks old and rib fractures that were seven weeks old) did not violate due process.

> The evidence of battered child syndrome was relevant to show intent, and nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant

12

> evidence simply because the defense chooses not to contest the point.  Concluding, as we do, that the prior injury evidence was relevant to an issue in the case, we need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial.  We hold that McGuire's due process rights were not violated by the admission of the evidence.

Id. at p. 70.

In cases not governed by the AEDPA, the Third Circuit has held that the admission of evidence may violate due process where the evidence "undermine[d] the fundamental fairness of the entire trial."  Keller v. Larkins, 251 F. 3d 408, 413 (3d Cir. 2001); see also Lesko v. Owens, 881 F. 2d 44, 51 (3d Cir. 1989) ("the erroneous admission of evidence that is relevant, but excessively inflammatory, might rise to the level of a constitutional violation"); Bisaccia v. Attorney General of State of New Jersey, 623 F. 2d 307, 313 (3d Cir. 1980) (when "the probative value of . . . evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then use of such evidence by a state may rise to the posture of fundamental fairness and due process of law").  But § 2254(d)(1) of the AEDPA does not permit this Court to grant habeas relief based on Third Circuit precedent.  See Marshall v. Rodgers, 133 S.Ct. 1446, 1450 (2013) (holding that circuit precedent may not be used under § 2254(d)(1) "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.")

Velez raised Ground One on direct appeal.  Velez argued that the use of his nickname - Pito - by witnesses and the prosecutor throughout the trial and during cross-examination of Velez violated due process because "it could only serve to reinforce the improper and erroneous message

13

conveyed by the mugshot and tattoo evidence:   that defendant was an established criminal."

(ECF No. 12-19 at 27.)   The Appellate Division rejected the claim because

> his nickname was relevant since several key witnesses, including Christina Dagle,
> Jose Vargas, and Angel Diaz, only knew him as Pito.   Velez confirmed that
> everyone knew him as Pito, rather than Jose.   Moreover, the nickname was not
> disparaging, and did not suggest criminal association or bad character on the part
> of Velez.   As Velez testified, his grandmother gave him the nickname when he
> was a child.   Such references do not have the clear capacity to bring about an
> unjust result.

(ECF No. 12-14 at 10.)

This Court is required to presume the correctness of the Appellate Division's findings that Velez' grandmother gave him the nickname, that the nickname was not disparaging, and that several key witnesses knew Velez only as Pito.   See 28 U.S.C. § 2254(e)(1) (" In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.   The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." )   Velez has not rebutted the presumption by clear and convincing evidence, and he has not shown that the Appellate Division' s adjudication of this claim " resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," as required to obtain habeas relief under 28 U.S.C. § 2254(d)(2).   See Miller-El v. Dretke, 545 U.S. at 240 (holding that a district court must " presume the [state] court' s factual findings to be sound unless [petitioner] rebuts the ' presumption of correctness by clear and convincing evidence.' " ); Rountree v. Balicki, 640 F.3d 530, 541-42 (3d Cir. 2011) (habeas court is " bound to presume that the state court' s factual

findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence." ) (quoting <u>Simmons v. Beard</u>, 590 F.3d 223, 231 (3d Cir. 2009)).

Velez also argued on direct appeal that the prosecutor's cross-examination of Velez about a teardrop tattoo that was on his face at the time of the incident violated due process.   On cross-examination, the prosecutor asked Velez if he had a tattoo at the time of the incident; Velez responded that he had a teardrop under his eye.   The prosecutor asked him why he had gotten rid of the tattoo and Velez responded:   "Because everybody they put in the newspaper that I was in prison before for murder and all this crazy stuff.   So, I didn't like it.   I took it out [after my arrest]."   (ECF No. 12-14 at 11.)   Defense counsel objected when the prosecutor asked Velez what the teardrop meant; the judge "excused the jury and defense counsel stated that the prosecutor's purpose was to get before the jury that the tattoo represented that Velez had killed someone before;" and the court did not allow the prosecutor to ask Velez what the tattoo meant. <u>Id.</u>   The Appellate Division found that "[t]he trial judge properly excluded further testimony regarding the teardrop and gave a limiting instruction to the jury.   The testimony about the tattoo was brief.   The jury is presumed to have heeded the judge's instructions.   Thus, there was no prejudice to defendant."   (ECF   No. 12-14 at 12) (citations omitted).

Again, this Court is required to presume the correctness of the Appellate Division's factual findings that the only evidence that the teardrop tattoo indicated that Velez had been in prison for murder came from Velez himself and that the judge gave a limiting instruction.   Velez has not rebutted this presumption by clear and convincing evidence and he has not shown that the admission of his testimony concerning the tattoo was contrary to, or an unreasonable application of Supreme Court holdings.

Velez further argued on direct appeal that the admission of the testimony of Angel Diaz that he had selected Velez' photograph from a book of photographs at police headquarters, and that the admission of the mugshot itself violated due process.   The Appellate Division rejected the claim as follows:

> Although a mugshot or reference to a mugshot has the potential to prejudice the defendant, there was no reference to a mugshot in this case.  The judge was concerned about such references and defense counsel and the prosecutor sanitized the photograph to avoid any appearance that it was a mugshot . . . .   No objection was made to the photo nor was a curative instruction necessary since the word "mugshot" was not used . . . .   The proof of defendant's guilt was overwhelming. The reference to Velez' nickname or tattoo or the photo identification did not lead the jury to a result it otherwise might not have reached.

(ECF No. 12-14 at 12-13 (citations and internal quotation marks omitted).

This Court is not aware of any Supreme Court case clearly establishing that the admission of the photograph of Velez and the other evidence to which Velez objects constitutes a violation of federal constitutional rights, and Supreme Court cases suggest the contrary.   See, e.g., Estelle, 502 U.S. 62 (allowing evidence of prior injuries in a trial for infant murder); Spencer v. Texas, 385 U.S. 554 (1967) (rejecting due process challenge to admission of evidence of prior similar crimes when judge gives limiting instruction).   "[The Supreme] Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (citation and internal quotation marks omitted). Because the admission of the evidence concerning the tattoo and the photo selected at police headquarters by Angel Diaz, and the use of Pito by the prosecutor and witnesses was not contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme

16

Court, Velez is not entitled to habeas relief on Ground One.   See Charlton v. Franklin, 503 F. 3d

1112, 1115 (10th Cir. 2007) (state court's admission of evidence of petitioner's prior bad acts did

not render trial fundamentally unfair or warrant habeas relief); Minett v. Hendricks, 135 Fed.

App'x. 547 (3d Cir. 2005) (rejecting claim that admission of "other crimes" evidence is contrary

to or an unreasonable application of clearly established Supreme Court precedent).

**B.      Failure to Instruct on Imperfect Self Defense and Passion/Provocation Manslaughter**

Velez argues that the failure to instruct the jury on imperfect self defense and

passion/provocation manslaughter violated due process.   On direct appeal he argued that the

imperfect self defense instruction was required because there was evidence that would have

supported a jury finding that he shot Lopez "in the unreasonable, but honest, belief that he needed

to do so to protect himself from [Lopez] - a belief provoked by [Lopez'] prior aggressive conduct

towards him, [his] knowledge that [Lopez] had recruited Dusty Lou to help kill defendant, and

most immediately, his belief that [Lopez] was reaching for a gun to shoot him."   (ECF No. 12-19

at 31.   He argued that, if the court had instructed the jury on imperfect self defense, then the jury

could have acquitted him of murder even though it rejected the justification of self defense.   Id.

The Appellate Division rejected this claim regarding the failure to instruct on imperfect self

defense on the ground that the trial judge did instruct the jury on alternate verdicts to murder:

> Imperfect self-defense may reduce a charge to manslaughter when a person uses
> deadly force under an honest but unreasonable belief that the force was necessary
> to defend himself.   The Code of Criminal Justice does not provide an independent
> category of justification, excuse, or mitigation under the concept of imperfect self-
> defense . . . .   A defendant may be entitled to have the jury consider evidence that
> his belief was honest, if not reasonable, if the evidence bears on his state of mind.
> However, this is satisfied when the judge instructs the jury on alternate verdicts of
> murder.   Here, the trial judge instructed the jury to consider murder, aggravated
> manslaughter, reckless manslaughter and self-defense.   The charge was adequate

> to allow the jury to convict on a lesser offense.   Plaintiff was thus not prejudiced by the lack of an imperfect defense charge.   As noted, the evidence of guilt was overwhelming.

(ECF No. 12-14 at 13-14 (citations and internal quotation marks omitted).

Velez also argued on direct appeal that the failure to instruct on passion/provocation manslaughter violated due process.   The Appellate Division rejected this claim on the ground that "no reasonable jury could [have] conclude[d] that the elements of passion/provocation manslaughter were present in this case."   (ECF No. 12-14 at 15.)

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him."   Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).   In Beck v. Alabama, 447 U.S. at 627, the Supreme Court held that the death penalty may not be imposed "when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict."   See also Hopper v. Evans, 456 U.S. 605, 611 (1982) (holding that due process does not require lesser included offense instruction in death penalty case where there is no lesser included offense under state law); Larry v. Branker, 552 F.3d 356, 366-68 (4th Cir. 2009); Brown v. Sirmons, 515 F.3d 1072, 1085-88 (10th Cir. 2008); Boltz v. Mullin, 415 F.3d 1215, 1233-34 (10th Cir. 2005).

In this case, the trial court instructed the jury on murder, aggravated manslaughter, reckless manslaughter and self defense, but the Appellate Division found that a specific instruction on imperfect self defense was not warranted and that the evidence did not support a passion/provocation manslaughter instruction.   Any error of state law regarding these rulings

18

cannot form the basis for habeas relief as habeas relief is not available for errors of state law.   See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."); Engle v. Isaac, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief").   In addition, the finding that the evidence did not support a passion/provocation manslaughter instruction is entitled to a presumption of correctness under 28 U.S.C. 2254(e)(1) and Velez has not rebutted this presumption of correctness by clear and convincing evidence.   Habeas relief is not warranted on Ground Two where the jury was instructed on alternatives to murder and, in any event, the Supreme Court has not held that such instructions are required by due process.[4]   To summarize, this Court finds that the New Jersey courts' adjudication of this failure to instruct claim was not based on an unreasonable determination of the facts in light of the evidence presented and did not result in a decision that was contrary to, or involved an unreasonable application of clearly established Supreme Court precedent.

## C.   Challenge to Hindering Apprehension Conviction

In Ground Three, Velez asserts that he should have been acquitted of the charge of hindering his apprehension because, while the state proved that the handgun was incriminating, the state failed to establish beyond a reasonable doubt that Velez threw the handgun into a yard

---

[4] Although failure to give an instruction may violate due process where the error "so infected the entire trial that the resulting conviction violate[d] due process" Henderson v. Kibbe, 431 U.S. 145, 154 (1997) (citation omitted), Velez has not shown that the failure to instruct on imperfect self defense or passion/provocation was an error that infected the entire trial and violated due process.

with the intent of hindering his apprehension, prosecution, conviction or punishment.   On direct appeal, Velez argued that, given that the police found the gun within one minute of arriving on the scene, the simple act of throwing the gun as Velez ran from the scene does not show intent to conceal the gun from the police.   The Appellate Division found that "Velez admitted that after he shot [Lopez] he ran down the alleyway and discarded the gun behind a funeral home.   A reasonable jury could find him guilty of the charge beyond a reasonable doubt, as it did."   (ECF No. 12-14 at 15.)

A sufficiency of the evidence claim is governed by Jackson v. Virginia, 443 U.S. 307, 318 (1979).   "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."   Id. at 324; accord Coleman v. Johnson, 132 S.Ct. 2060, 2064 (2012) (per curiam); Cavazos v. Smith, 132 S.Ct. 2 (2011) (per curiam); McDaniel v. Brown, 558 U.S. 120, 121 (2010) (per curiam). "[I]t is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial."   Cavazos, 132 S.Ct. at 3.   Jackson "requires a reviewing court to review the evidence in the light most favorable to the prosecution.   Expressed more fully, this means a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"   McDaniel, 130 S. Ct. at 673 (quoting Jackson, 443 U.S. at 326); see also House v. Bell, 547 U.S. 518, 538 (2006) ("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict").   "[T]he

20

standard . . . does not permit a court to make its own subjective determination of guilt or innocence." Jackson at 320, n. 13.

In this case, the jury was convinced that Velez threw away the gun to hinder his apprehension, "and the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality.   The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d)." Coleman, 132 S.Ct. at 2065.   Affording due respect to the role of the jury and the New Jersey courts under § 2254(d), this Court finds that the evidence "was not nearly sparse enough to sustain a due process challenge under Jackson." Id.   Velez is not entitled to habeas relief on Ground Three.   See Eley v. Erickson, 712 F.3d 837, 847-853 (3d Cir. 2013) (holding that state courts' adjudication of sufficiency of evidence claims was not contrary to, or an unreasonable application of Jackson).

**D.   Challenge to Sentence**

In Ground Four, Velez asserts that the maximum sentence of life in prison for murder was not supported by the proper analysis of aggravating and mitigating factors.   Velez raised this ground on direct appeal, arguing that the trial judge had improperly analyzed the aggravating factors under New Jersey law and improperly failed to recognize mitigating factors.   (ECF No. 12-19 at 40-43.)   The Appellate Division rejected the ground, finding that "[t]he aggravating factors found by the judge [were] clearly supported by the record" and "[t]here was no mistaken exercise of sentencing discretion and no warrant to disturb the sentences imposed."   (ECF No. 12-14 at 17.)

Here, the state correctly argues that Velez' life sentence is not unconstitutional.   Absent a claim that a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence are questions of state law over which this Court has no jurisdiction under § 2254. See Chapman v. United States, 500 U.S. 453, 465 (1991) (holding that under federal law, "the court may impose . . . whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment"); see also Wainwright v. Goode, 464 U.S. 78 (1983).   Habeas relief is not warranted on the sentencing claim because the New Jersey courts' adjudication of the claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

**E.      Certificate of Appealability**

Velez has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B).   See Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## V.   CONCLUSION

This Court dismisses the Petition with prejudice and denies a certificate of appealability.


   s/Dickinson R. Debevoise
**DICKINSON R. DEBEVOISE**
**U.S.S.D.J.**

Dated:  May 14, 2015

22